[No. B100047. Second Dist., Div. One. Aug. 29, 1996.]

DANIEL ROMANO, Plaintiff and Appellant, v.
AMERICAN TRANS AIR, Defendant and Respondent.

**COUNSEL**

Daniel Romano, in pro. per., Kenneth H. Moss and Rex Beaber for Plaintiff and Appellant.

Irwin & Reily, David H. Reily and Janine K. Jeffery for Defendant and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—Daniel Romano sued American Trans Air (and others who are not parties to this appeal) to recover damages after he was battered by another passenger while on a flight from Los Angeles to Hawaii.[1] American Trans Air demurred, contending Romano's claims were preempted by the Airline Deregulation Act of 1978 (the ADA, 49 U.S.C. § 41713(b)(1)). The demurrer was sustained without leave to amend, and Romano appeals from the judgment of dismissal thereafter entered.[2] We reverse, concluding that the ADA does not so completely preempt the field of airline regulation as to preclude a personal injury action for damages suffered as the result of a flight attendant's failure to restrain one passenger from attacking another passenger.

### DISCUSSION

### I.

Prior to 1978, the Federal Aviation Act of 1958 (FAA) gave the Civil Aeronautics Board (CAB) authority to regulate interstate air fares and to take administrative action against certain deceptive trade practices. It did not, however, expressly preempt state regulation; to the contrary, it contained a savings clause (49 U.S.C. § 1506) making it clear that its provisions were in addition to the remedies then existing at common law and by statute.[3] (*Morales* v. *Trans World Airlines, Inc.* (1992) 504 U.S. 374, 378 [119 L.Ed.2d 157, 163-164, 112 S.Ct. 2031].) In 1978, Congress determined that " 'maximum reliance on competitive market forces' " would best further

---

[1]Romano's wife, seven months pregnant, was traveling with him. She suffers from extreme claustrophobia, a condition heightened by her pregnancy, and she did not want to close her window shade when the in-flight movie started. One flight attendant after another insisted that it be closed, and Romano compromised by closing it halfway. The other passengers were not satisfied and the flight attendants did nothing to stop them from heckling and harassing Romano and his wife. A large male passenger, accompanied by a flight attendant, walked to Romano's seat, verbally harassed Romano's wife and, despite the couple's explanation, threatened to "seat himself near [Romano] and his wife and make the rest of their flight miserable." The passenger's voice got louder and more menacing, but the flight attendants did nothing to stop him. The passenger then hit Romano in his face, and still the flight attendants did nothing (another passenger restrained the attacker). Romano suffered physical injuries and emotional distress.

[2]Romano sought damages for breach of contract, assault, battery, negligence, and intentional and negligent infliction of emotional distress. The demurrer was sustained without leave to amend as to all causes of action except the breach of contract claim, which Romano then dismissed without prejudice so that a final, appealable judgment could be entered.

[3]This was the language of section 1506: "Nothing contained in this Chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

the " 'variety [and] quality . . . of air transportation services' " and, to that end, enacted the ADA. (*Ibid.* [119 L.Ed.2d at p. 164].) "To ensure that the States would not undo federal deregulation with regulation of their own," the ADA included a preemption provision prohibiting the states from enforcing any law " 'relating to rates, routes, or services' of any air carrier." (*Morales* v. *Trans World Airlines, Inc., supra,* 504 U.S. at pp. 378-379 [119 L.Ed.2d at p. 164]; 49 U.S.C. § 1305(a)(1).)[4]

The ADA retained the CAB's enforcement authority regarding rates and deceptive trade practices (which was transferred to the Department of Transportation (DOT) in 1985), and it also retained the FAA's savings clause (49 U.S.C. § 1506), which was recodified in 1994 as section 40120(c), and revised to provide that "[a] remedy under this part is in addition to any other remedies provided by law." Also in 1994, the ADA's preemption provision (49 U.S.C. § 1305) was recodified as section 41713(b)(1), and revised to provide that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. . . ."

## II.

In *Morales* v. *Trans World Airlines, Inc., supra,* 504 U.S. 374, the Supreme Court held that the ADA preempted state regulation of allegedly deceptive airline fare advertisements because such regulations have "a connection with, or reference to, airline 'rates, routes, or services,' " but left open the question about where the preemption line ought to be drawn. (*Id.* at pp. 384, 390 [119 L.Ed.2d at pp. 167-168, 171-172].) In *American Airlines, Inc.* v. *Wolens* (1995) 513 U.S. 219, __ [130 L.Ed.2d 715, 722, 115 S.Ct. 817], the Supreme Court revisited the preemption issue in a class action attacking an airline's retroactive changes to the terms of its frequent flier program. This time, the Court held the claims based on the state's consumer fraud statute *were* preempted but the claims alleging breach of contract were *not*: "We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. . . . A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services." (*Id.* at pp. __ [130 L.Ed.2d at pp. 725-726].)

Although no claims for personal injuries were alleged in *American Airlines, Inc.* v. *Wolens, supra,* 513 U.S. __, the high court's discussion of the

[4]Subdivision (a)(1) of section 1305 prohibited the states from "enact[ing] or enforc[ing] any law . . . relating to [air carrier] rates, routes, or services."

contract claim is instructive. After noting the DOT's authority to require an airline to post a performance bond conditioned on the airline's "making appropriate compensation . . . for failure . . . to perform air transportation services in accordance with agreements therefor" (49 U.S.C. former § 1371(q)(2), now 49 U.S.C. § 41112(b)), the Supreme Court noted that the same statute "requires an air carrier to have insurance, in an amount prescribed by the DOT, to cover claims for personal injuries and property losses 'resulting from the operation or maintenance of aircraft.'" (*American Airlines, Inc.* v. *Wolens, supra,* 513 U.S. at p. ___, fn. 7 [130 L.Ed.2d at p. 727].) In that context, the Court noted that the airline had acknowledged that "'safety claims,' for example, a negligence claim arising out of a plane crash, 'would generally not be preempted' [and that the United States, as amicus curiae, had said it was] 'unlikely that Section 1305(a)(1) preempts safety-related personal-injury claims relating to airline operations.'" (*American Airlines, Inc.* v. *Wolens, supra,* 513 U.S. at p. ___, fn. 7 [130 L.Ed.2d at p. 727].)

## III.

■ A number of federal appeals and district courts and a few other state courts have considered the precise issue now before us—whether personal injury claims by passengers against airlines are preempted by the ADA—and, with very few exceptions, have held that such claims are *not preempted.* The exception is illustrated by *Harris* v. *American Airlines, Inc.* (9th Cir. 1995) 55 F.3d 1472, which the trial court followed in our case. In our view, *Harris* is wrong and the majority is right, and we therefore adopt the majority rule. ■ (*Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521], revd. on other grounds (1960) 362 U.S. 628 [4 L.Ed.2d 1002, 80 S.Ct. 1050] [the decisions of lower federal courts on federal questions are not binding on state courts, and where the lower federal courts are divided, state courts must necessarily make an independent determination of federal law]; *Debtor Reorganizers, Inc.* v. *State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64] [the view of the Ninth Circuit is no more significant than the view of any other circuit].)

## A.

■ The foundational underpinning of any preemption issue is Congressional intent. (See *Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 422, 112 S.Ct. 2608] [the purpose of Congress is the "ultimate touchstone" of the preemption analysis].) Indeed, concepts of federalism and respect for state sovereignty create a presumption that Congress intends to permit the states to devise their own remedies for common law damage claims and, in the absence of an express congressional command, state law is preempted only if it actually conflicts with federal law, or

if federal law so thoroughly occupies a legislative field by a pervasive and complex regulatory system as to make reasonable the inference that Congress left no room for the states to supplement it. (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 675, 102 S.Ct. 3014]; *Solorzano* v. *Superior Court* (1992) 10 Cal.App.4th 1135, 1139 [13 Cal.Rptr.2d 161].) ▮▮ Since the ADA does not expressly preempt personal injury claims, and since there is no actual conflict between a personal injury claim and the provisions of the ADA, the only question is whether a Congressional intent to preempt the entire field may be inferred from the regulatory scheme. (*Pacific Gas & Elec.* v. *Energy Resources Comm'n* (1983) 461 U.S. 190, 206 [75 L.Ed.2d 752, 766, 103 S.Ct. 1713] [the burden is on the party asserting preemption to establish that it was the "clear and manifest purpose of Congress"].)

The motivating force for the deregulation of the airline industry and the adoption of the ADA was economic: "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services. . . ." (1978 U.S. Code Cong. & Admin. News, at p. 3773.) As a co-sponsor of the bill put it, "[f]ederal regulation [had] stifled competition and needlessly raised the price of air travel. The conclusion reached is that regulation should be drastically redirected to encourage competition, innovation and lower prices." (123 Cong. Rec. 4220 (1977).) Of course, at the time the ADA was adopted, Congress was aware that common law remedies were protected by the FAA's existing savings clause (49 U.S.C. § 1506). And when the ADA was before the Senate, the summary of the statute explained that its preemption section "makes explicit the [CAB's] authority to exercise exclusive jurisdiction over interstate and foreign air transportation [but] *is not intended to change the state-federal relationship over matters not regulated by the [CAB].*" (123 Cong. Rec. 4219 (1977), italics added.) The House analysis included a similar explanation. (123 Cong. Rec. 30595 (1977).)

The department charged with enforcement of the ADA (formerly the CAB, now the DOT) interprets the ADA to preempt economic factors "that go into the provision of the quid pro quo for passenger's fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment, bonding and corporate financing . . . ." (44 Fed. Reg. 9948, 9951 (Feb. 15, 1979).) That this is a complete preemption of all fare-related matters but *not* of state claims for personal injuries is shown by the DOT's adoption of regulations requiring airlines to maintain liability insurance "for bodily injury to, or death of, an individual or loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft . . . ." (49 U.S.C.

§ 41112(a); 14 C.F.R. § 205.5(a) (1992); *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10] [administrative interpretation of a statute is entitled to respect by the courts and, unless clearly erroneous, is a significant factor to be considered].) Since there is no provision in the ADA for personal injury or property damage lawsuits,[5] it follows ineluctably that liability insurance would be unnecessary if an injured passenger could not sue an airline for damages—and that, therefore, Congress intended that airlines respond to common law claims for personal injury damages. (*Hodges* v. *Delta Airlines, Inc.* (5th Cir. 1995) 44 F.3d 334, 338 [the importance of a complete preemption of state law in the area of personal injury damage claims would have rendered any requirement of insurance coverage nugatory]; *American Airlines, Inc.* v. *Wolens, supra,* 513 U.S. at p. __, fn. 7 [130 L.Ed.2d at p. 727] [the United States government considers it "unlikely" that the ADA preempts personal injury claims related to airline operations].)[6]

For these and similar reasons, the vast majority of courts that have considered the issue have concluded, as do we, that personal injury claims by passengers against airlines are not preempted by the ADA. (See, e.g., *Margolis* v. *United Airlines, Inc.* (E.D.Mich. 1993) 811 F.Supp. 318 [negligence action for injuries suffered when luggage carrier fell out of overhead bin]; *O'Hern* v. *Delta Airlines, Inc.* (N.D.Ill. 1993) 838 F.Supp. 1264 [negligence action for hearing loss suffered when airplane ascended too rapidly]; *Stagl* v. *Delta Air Lines, Inc.* (E.D.N.Y. 1994) 849 F.Supp. 179, revd. on other grounds (2d Cir. 1995) 52 F.3d 463 [negligence action for injuries suffered when passenger grabbing luggage from carousel knocked plaintiff

[5]Although the FAA requires airlines to provide "safe and adequate" service to their passengers (49 U.S.C. § 41702), both the FAA and the ADA are silent when it comes to a passenger's private right of action for damages suffered as a result of a violation of this standard. (See 14 C.F.R. §§ 13.1-13.27, 302.200-302.218; *Anderson* v. *USAir, Inc.* (D.C. Cir. 1987) 818 F.2d 49, 54-55 [260 App.D.C. 183]; *Hingson* v. *Pacific Southwest Airlines* (9th Cir. 1984) 743 F.2d 1408, 1414; *Diefenthal* v. *C.A.B.* (5th Cir. 1982) 681 F.2d 1039, 1049.) And although a passenger may file an administrative complaint with the FAA or the DOT (14 C.F.R. §§ 13.5, 302.201) or a civil action to enforce certain certification requirements (49 U.S.C. § 46108), the only remedies available in such actions are civil and criminal penalties and injunctive relief, not damages (49 U.S.C. § 46301 et seq.). There is no provision for the recovery of damages by a private party.

[6]American Trans Air contends the only *non*-preempted personal injury claims are those related to operations and maintenance (for example, a wrongful death action arising out of a crash allegedly caused by the negligent operation or maintenance of an airplane), and that all personal injury claims related (however remotely) to rates, routes or services *are* preempted. We cannot agree. Almost everything an airline does (or fails to do) is arguably related to service (selling tickets, loading luggage, providing smooth landings), some things more directly than others. To adopt the airline's view is to conclude that there is no remedy for in-flight negligence of any kind—unless the airplane itself malfunctions—because, as a practical matter, passengers are necessarily dependent upon the flight crew's "service" for every- and anything that occurs in mid-air. Had that been the intent of Congress, we are confident it would have said so.

to the floor]; *Hodges* v. *Delta Airlines, Inc., supra,* 44 F.3d 334 [negligence action for injuries suffered when case of rum fell out of overhead bin]; *Smith* v. *America West Airlines, Inc.* (5th Cir. 1995) 44 F.3d 344 [negligence action for failure to prevent hijacker from boarding airplane]; *Travel All Over The World* v. *Saudi Arabia* (7th Cir. 1996) 73 F.3d 1423 [breach of contract and defamation claims by travel agent based on cancellation of group reservations and false statements to clients]; *Seals* v. *Delta Air Lines, Inc.* (E.D.Tenn. 1996) 924 F.Supp. 854 [negligence and breach of contract claims based on airline's failure to provide assistance to handicapped passenger in making flight connection]; *Continental Airlines, Inc.* v. *Kiefer* (Tex. 1996) 920 S.W.2d 274 [negligence action for injuries suffered when briefcase fell from overhead bin].)

## B.

And then there is the Ninth Circuit's opinion in *Harris* v. *American Airlines, Inc., supra,* 55 F.3d 1472. In *Harris,* a Black female passenger alleged that despite an obviously intoxicated White male passenger's rude and obnoxious remarks to her, including racial slurs, a flight attendant continued to serve him alcoholic beverages. Harris's complaint alleged negligence, intentional infliction of emotional distress, and violations of Oregon's Public Accommodation Act. As framed by the court, the issue was whether "the [i]n-[f]light [c]onduct of American Airlines [c]onstitutes '[s]ervice' under the [ADA]." (*Id.* at pp. 1473, 1476.)

Without analysis of the *extent* of the ADA's preemption, *Harris* holds that, because the plaintiff was complaining about "the *service* of alcoholic beverages that she claim[ed] caused [the male passenger's] reprehensible conduct," her allegations "pertain[ed] directly to a '*service*' the airlines render: the provision of drink. Moreover, they pertain[ed] directly to how airlines treat passengers who are loud, boisterous, and intoxicated." (*Harris* v. *American Airlines, Inc., supra,* 55 F.3d at p. 1476, italics added.) For this reason, her claim was preempted. However, *Harris* is a two-to-one decision, with a dissent succinctly pointing to the majority's failure to consider the intent of the ADA (economic deregulation), and suggesting that "beverage 'services' preempted under the ADA are limited to economic decisions regarding the provision of drinks, e.g., whether or not to provide drinks on any flight, and contractual decisions about whether to charge for the drinks or provide them free. . . . If Ms. Harris were ultimately to recover damages in this case, the judgment could affect the airline's training or security practices regarding how to protect passengers from harassment, but it would

not regulate the economic or contractual aspects of the airline's provision of beverages." (*Id.* at p. 1478 (dis. opn. of Norris, J.).)[7]

The dissent in *Harris* is consistent with the approach taken by several courts, where "services" are contrasted with "safety" and "operations" issues. In those cases, the courts have found that while the regulation of "services" *is* preempted by the ADA, the regulation of "safety" and "operations" is *not preempted*. (E.g., *O'Hern* v. *Delta Airlines, Inc.*, *supra*, 838 F.Supp. at p. 1267; *Hodges* v. *Delta Airlines, Inc. supra*, 44 F.3d at pp. 337-338.) As the Texas Supreme Court pointed out in *Continental Airlines, Inc.* v. *Kiefer, supra*, 920 S.W.2d at page 283, however, the focus on a few words taken out of context may lead to anomalous results, and it is our view that a more thoughtful, less quixotic rule emerges when the analytical framework is placed on the foundation of Congressional intent. This way, we do not parse the language of the statute but consider the economic motivation behind the ADA and look to whether the plaintiff's claim is "related to a price, route or service." (*Kelly* v. *Robinson* (1986) 479 U.S. 36, 43 [93 L.Ed.2d 216, 224-225, 107 S.Ct. 353] [the text of a statute is simply the starting point, and our analysis of it must be guided by the object and policy behind its adoption].) From this perspective, we see that where the airlines have a legitimate interest to protect (the right to advertise their rates, set their routes, determine whether to provide food service on a particular flight), the states cannot interfere. But where there is no legitimate interest needing protection—as is the case when the issue is negligence—there is no preemption.

## C.

We conclude that Congress enacted the ADA to prevent the states from adopting regulations that frustrate the goals of federal deregulation of airline

[7]Two district courts within the Ninth Circuit have, as required, followed *Harris.* (*Stone* v. *Continental Airlines, Inc.* (D. Hawaii 1995) 905 F.Supp. 823; *Costa* v. *American Airlines, Inc.* (C.D.Cal. 1995) 892 F.Supp. 237, 239 [but disagreeing with *Harris* and noting that it seemed unlikely that "Congress or the Supreme Court would have intended this broad result or the impact it may have on bodily injury claims arising from other kinds of airline services"].) The only other cases departing from the majority view of which we are aware are (1) *Von Anhalt* v. *Delta Air Lines, Inc.* (S.D.Fla. 1990) 735 F.Supp. 1030, where Zsa Zsa Gabor claimed she was improperly ejected from an airplane when she refused to permit a flight attendant to stow her carry-on bag, and the district court relied on Fifth Circuit cases predating the Fifth Circuit's current view, which is the majority view (*Hodges* v. *Delta Airlines, Inc., supra*, 44 F.3d 334; *Smith* v. *America West Airlines, Inc., supra*, 44 F.3d 344); (2) *Howard* v. *Northwest Airlines, Inc.* (S.D.Tex. 1992) 793 F.Supp. 129, a wrongful death action based on the airline's failure to provide "meet and assist" services to a sick passenger, another district court case relying on the same out-dated Fifth Circuit authorities cited in *Von Anhalt*; and (3) *Williams* v. *Express Airlines I, Inc.* (W.D.Tenn. 1993) 825 F.Supp. 831, where a handicapped passenger claimed false imprisonment based on the airline's refusal to permit him to board a flight and then restraining him while he was forced to wait for an alternative flight.

rates, routes and services and matters related thereto, not to prevent the states from providing a remedy for a passenger's common law personal injury damage claim. Accordingly, actions to recover damages for an airline's negligence and other torts which do not intrude upon or affect the DOT's regulation (or the airline's self-regulation) of air fares and other rates, routes or services, are *not* preempted by the ADA. It follows that American Trans Air's demurrer should have been overruled.

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions (1) to vacate its order sustaining American Trans Air's demurrer, (2) to enter a new order overruling the demurrer, and (3) to specify the time within which American Trans Air must answer Romano's complaint. Romano is awarded his costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 26, 1996.