EDITH H. JONES, Circuit Judge:
During a flight from the Caribbean to Miami, Frances Hodges was injured when a fellow passenger opened an overhead compartment and dislodged a case containing several bottles of rum. The box fell and cut her arm and wrist. In her lawsuit against Delta Airlines, Hodges alleged that the airline’s negligence caused her injury and medical expenses. The question before this court en banc is whether her state law tort claim for physical injury based on alleged negligent operation of the aircraft is preempted by § 1805(a)(1) of the Airline Deregulation Act of 1978 (ADA), 49 U.S.CApp. §§ 1301 et seq. 92 Stat. 1705 (codified at various sections of Title 49 U.S.CApp.). We hold that it is not and therefore overrule Baugh v. Trans World Airlines, Inc., 915 F.2d 693 (5th Cir.1990), an originally unpublished opinion that, as circuit precedent, compelled the opposite result in the panel opinion herein.

DISCUSSION

The summary judgment awarded by the district court is reviewed de novo on appeal. Hanson v. Continental Ins. Co., 940 F.2d 971, 975 (5th Cir.1991).
Section 1305(a)(1) provides in pertinent part:
[N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or- services of any air carrier having authority under Title IV of this Act to provide air transportation.
49 U.S.CApp. § 1305(a)(1).
This provision originated in the ADA, an economic deregulation statute. The Federal Aviation Act of 1958 (FAA), 72 Stat. 731, 49 U.S.C.App. § 1301 et seq. (as amended), conferred on the Civil Aeronautics Board economic regulatory authority over interstate air transportation. The FAA did not expressly preempt state regulation of intrastate air transportation. In 1978, Congress amended the FAA after determining that efficiency, innovation, low prices, variety, and quality would be promoted by reliance on competitive market forces rather than pervasive federal regulation. Congress enacted the ADA to dismantle federal economic regulation. To prevent the states from frustrating the goals of deregulation by establishing or maintaining economic regulations of their own, Congress enacted § 1305(a)(1), which preempts the states from enforcing any law “relating to rates, routes or services” of any carrier. Morales v. Trans World Airlines, Inc., — U.S. -, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).
The question in this case is the breadth of that express preemption of state law.[1] Interpretation of the statutory language is the key to construing its preemptive *336 force. Morales, — U.S. at-, 112 S.Ct. at 2037.
The Supreme Court has twice broached the subject of § 1305(a)(1) preemption in a way that informs but does not squarely resolve this case. In the first decision the question was whether § 1305(a)(1), in providing that no state may enforce any law “relating to rates”, overcame the attempts of several state attorneys general to apply state deceptive advertising laws against the airlines. Morales held that it did. Morales drew upon the broad construction of the phrase “relating to” in the ERISA cases.[2] Thus, the phrase “relating to” means “to stand in some relation; to have bearing or concern; to pertain; refer; to bring to association with or connection with.” Morales, — U.S. at-, 112 S.Ct. at 2037 (quoting Black’s Law Dictionary 1158 (5th Ed.1979)). Consequently, “[s]tate enforcement actions having a Connection with or reference to airline ‘rates, routes or services’ are preempted” under § 1305(a)(1). Id.
As a necessary consequence of its broad interpretation, the Court rejected the argument that § 1305(a)(1) preempts the states only from actually prescribing rates, routes, or services. — U.S. at-, 112 S.Ct. at 2037-38. The Court also rejected the notions that “only state laws specifically addressed to the airline industry are preempted” and that “preemption is inappropriate when state and federal law are consistent.” Morales, — U.S. at-, 112 S.Ct. at 2038. Laws of general applicability, even those- consistent with federal law, are preempted if they have the “forbidden significant effect” on rates, routes or services. — U.S. at-, 112 S.Ct. at 2039.
The Court acknowledged, however, that “[s]ome state actions may affect [airline services] in too tenuous, remote or peripheral a manner” to be preempted. Morales, — U.S. at-, 112 S.Ct. at 2040 (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). Refusing to state exactly where the line would be drawn in a close case, the Court observed that the facts before it presented no close question of the connection between the attempted regulation and air fares.
Morales commands that whatever state laws “relate to rates, routes or services” are broadly preempted, but it does not define “services.” The panel opinion in this ease concluded that:
“Services” generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as “services” and broadly to protect from state regulation.
Hodges v. Delta Airlines, Inc., 4 F.3d 350, 354 (5th Cir.1993). The court adheres to this definition of services en banc, a definition inferentially reinforced by the Court’s decision in American Airlines, Inc. v. Wolens, -U.S.-,-, 115 S.Ct. 817, 823, 130 L.Ed.2d 715 (1995) (describing claims concerning American Airlines’ frequent flyer program as related to rates and “services,” i.e., access to flights and class-of-service upgrades ... ”). Thus, federal preemption of state laws, even certain common law actions “related to services” of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft. *337 This definition harmonizes § 1305(a)(1) with other sections of airline regulatory law, with Congressional intent underlying the ADA, with the regulatory agencies’ understanding of the statute, and with general principles of federal preemption.
Under the regulatory framework established by the FAA, the term “service” or “services” had an established definition, consistent with dictionary usage.[3] A vestige of that definition remains in what is left- of the federal airline regulatory statutes:
“All-cargo air service” means the carriage by aircraft in interstate or overseas air transportation of only property or mail, or both.
49 U.S.C.App. § 1301(11) (“Definitions” section). “Air service” referred at the time of passage of the ADA to the point-to-point transportation of passengers, cargo or mail, and it encompassed the business of transportation as well as the schedules and type of contract (common carriage or charter). This court interpreted “service” to embody the airlines’ quality of service in such a fashion as to authorize federal regulation of smoking on commercial flights. Diefenthal v. C.A.B., 681 F.2d 1039 (5th Cir.1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983).[4]
Following deregulation, the CAB’s statements implementing the ADA strongly support the view that the ADA was concerned solely with economic deregulation, not with displacing state tort law. The Board concluded that:
preemption extends to all of the economic factors that go into the provision of the quid pro quo for passenger’s [sic] fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment, [and] bonding and corporate financing.[5]
The Federal Aviation Agency, to which some of the Civil Aeronautics Board’s powers were transferred by the ADA, see 49 U.S.CApp. § 1551(b), continues to identify “service” or “services” in its regulations to incorporate the accoutrements of the passenger- or shipper- and carrier contract.[6]
A facile analogy to Morales and the ERISA pre-emption cases could suggest that “services” includes all aspects of the air carrier’s “utility” to its customers, hence, any state tort claim may “relate to” services as a result of its indirect regulatory impact on the *338 airline’s practices. Taken to its logical extreme, this argument would suggest that a lawsuit following a fatal airplane crash could relate to “services”.
That Congress did not, however, intend § 1305(a)(1) to preempt all state claims for personal injury is evident from at least one other provision of the remaining airline regulatory statutes. Air carriers are required to maintain insurance or self-insurance as prescribed by the Federal Aviation Administration that covers “amounts for which ... air carriers may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft ...” 49 U.S.C.App. § 1371(q) (1994); see also, 14 C.F.R. § 205.5(a) (1992) (insurance regs.).[7] The importance of § 1371(q) cannot be understated, for it can only be understood to qualify the scope of “services” removed from state regulation by § 1305(a)(1). A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory.
The FAA further defines “operation of aircraft” as “the use of aircraft for the purpose of air navigation ... including] the navigation of aircraft.” 49 U.S.CApp. § 1301(31) (1988). One uses the overhead luggage racks or the food and beverages provided in aircraft operation just as one uses the cigarette lighter or built-in cooler compartment in an automobile, and all these devices are available to support the general purpose of navigation.
Significantly, too, neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.[8] See American Airlines v. Wolens, — U.S. at —— n. 7, 115 S.Ct. at 825 n. 7 (American Airlines and United States, as amicus curiae, agree it is unlikely that safety-related personal injury claims arising from airplane operations are preempted.) “This silence takes on added significance in light of Congress’s failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.”[9] The Supreme Court has repeatedly cautioned that federal courts should not displace state police powers by federal law unless that was the “clear and manifest purpose of Congress.” California v. ARC America Corp., 490 U.S. 93, 102, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).[10]
Delta Airlines agrees that among the “services” deregulated under the ADA and covered by its preemption clause are the economic or contractual features of air transportation. Delta argues, however, that Mrs. Hodges’ accident arose out of the “services” of baggage handling and boarding, not out of the “operation and maintenance of aircraft” covered by § 1371(q). The “services” that the state may not regulate under § 1305(a)(1) are distinct from the “operation *339 and maintenance of aircraft”, and all claims related to “services” are preempted.[11]
This argument fails on two levels. First, if the statutory provisions created a strict dichotomy between services and operation or maintenance of aircraft, Hodges’ injury more properly is laid at the door of operations. Whether certain luggage may be placed in overhead bins and whether the flight attendants properly monitor compliance with overhead rack regulations are matters that pertain to the safe operation of a flight. “Baggage handling” and “boarding”, as referred to in the above-quoted CAB statement, concern the airline’s policy for permitting baggage to be carried or passengers to be permitted to board. These are aspects of the “service” offered; they do not refer directly to the way in which the aircraft is operated.[12]
Second, as this example shows, the provinces of “services” and “operation and maintenance of aircraft” overlap somewhat conceptually; no strict dichotomy exists. There is not, however, a fundamental inconsistency between the two provisions. By means of § 1305(a)(1), Congress intended to prevent the states from regressing on economic deregulation by applying their own laws or rules concerning “services,” but in § 1371(q), Congress explicitly preserved airlines’ duty to respond to tort actions, inferentially state law actions, for physical injury or property damage.
Finally, unlike the NAAG Guidelines in Morales, enforcement of tort remedies for personal physical injury ordinarily has no “express reference” to services as defined above. See Morales, — U.S. at-, 112 S.Ct. at 2039. Enforcement of such tort duties normally will not have “the forbidden significant effect on airlines’ services. Id. Morales relied in part on the fact that the state restrictions on airfare advertising had a significant economic effect on fares. Generally, however, state tort laws concerning the operation and maintenance of aircraft can be enforced’ consistently with and distinctly from the services that Congress deregulated. Most cases will not pose as close a question as this one.
But this general vindication of state tort claims arising from the maintenance or operation of aircraft does not extend to all conceivable state tort claims. Two examples of the continued scope of preemption are illustrative. In O’Carroll v. American Airlines, Inc., 863 F.2d 11 (5th Cir.), cert. denied, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), the plaintiff and his cousin were removed from a commercial airline flight because they were loud, boisterous, and intoxicated. 863 F.2d at 12. O’Carroll sued, alleging that he was wrongfully evicted from the flight. This court vacated O’Carroll’s sizea-ble jury verdict, holding that his state law claims were preempted by § 1305(a)(1). O’Carroll did not discuss the scope of § 1305(a)(1) because the state law claims arising from the alleged wrongful exclusion undeniably related only to the services provided by the airline. No claim was made that the airline breached any safety-related tort duty by bumping O’Carroll. Enforcement of O’Carroll’s state law claims would result in significant de facto regulation of the airlines’ boarding practices and, moreover, would interfere with federal law granting the airlines substantial discretion to refuse to carry passengers. 49 U.S.C.App. § 1511(a).
Similarly, the claims asserted by the plaintiff in West v. Northwest Airlines, 995 F.2d *340 148 (9th Cir.1993), cert. denied, — U.S. -, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), would be preempted under our interpretation of “services”. Plaintiff West sued because he was “bumped” from the overbooked airline flight for which he had reserved a seat. After remand for reconsideration in light of Morales, the Ninth Circuit held, over a dissent, that West’s state law claims were too tenuously connected to “rates, routes and services” to be preempted by § 1305(a)(1). The majority did find West’s punitive damage claim preempted. Under either Morales or the analysis advanced here, it is difficult to see how a lawsuit for overbooking would not “relate to” the airline’s contract for “services” with its passenger.[13]

Hodges’ Claims

Hodges alleged that Delta was negligent in allowing the case of rum to be stowed in an overhead storage bin. This tort claim for personal injury has no specific “reference to” airline services, see Morales, — U.S. at -, 112 S.Ct. at 2039, although it does derive from the operation of the aircraft. Nor would enforcement of her claim significantly affect Delta’s services, as defined above. As other eases have recently held, this type of claim does not relate to Delta’s services and is not preempted by § 1305(a)(1). See, e.g., Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc., 992 F.2d 291 (11th Cir.1993); Margolis v. United Airlines, Inc., 811 F.Supp. 318 (E.D.Mich.1993); but see Williams v. Express Airlines I, Inc., 825 F.Supp. 831 (W.D.Tenn.1993).
The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings.

. State law is displaced by federal law where (1) Congress expressly preempts state law; (2) Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme; or (3) state law conflicts with federal law or interferes with the achievement of federal objectives. Hillsborough County, Florida v. Automated Medical Laboratories, Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d (1985); Shaw v. Delta Airlines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); see also Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

. See Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (a state law relates to an employee benefit plan and is preempted "if it has a connection with or reference to such a plan”). This language is "expansive,” Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552-53, 95 L.Ed.2d 39 (1987), and “broadly worded,” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137-40, 111 S.Ct 478, 482-83, 112 L.Ed.2d 474 (1990).

. Webster’s Third New International Dictionary (1976) includes some of the following definitions:
An action or use that furthers some purpose; supply of needs [e.g., a vending machine for the service of passersby]; railroads and telephone companies produce services — useful labor that does not produce a good; provision for conducting a public utility [e.g., air freight service ]; regularly scheduled trip on public transportation ([free air services]).

. Hodges asserts that Diefenthal supports the position that notwithstanding § 1305(a)(1), no state tort suit is preempted. Diefenthal held that two passengers’ lawsuit complaining that they were forced to ride in the “smoking section” of the aircraft was not within federal jurisdiction based on an insufficient amount in controversy. The court did not decide and was not presented with any issue of federal preemption, however, so Diefenthal is inapposite to construing § 1305(a)(1).

. 44 Fed.Reg. 9948, 9951 (Feb. 15, 1979). The CAB also opined;
[A] state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages
for bumping (denial of boarding), segregation of smoking passengers, minimum liability for loss, damages and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.

Id.

.Specific references to the words "service” or "services” in the Code of Federal Regulations governing airlines are too numerous to incorporate here. Some examples include (all within 14 C.F.R.): 14 C.F.R. § 201.1 (domestic all-cargo air service); § 201.4(d) (the type of service— passengers, property or mail to be rendered and whether such services are to be rendered on scheduled or charter operations); § 204.3(t) (a description of the service to be operated if an application is granted); § 207.1 (defining special "services"); § 207.13(b) (terms of service for charter trips); § 207.71(a) (terms of service for charter trips include those for ground accommodations and services); § 217.4(b) (listing classes of service including scheduled passengers/cargo; scheduled all-cargo, ... non-scheduled services ...) (emphasis added).

. Further, § 1506 of the FAA provides that "[njothing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.” 49 U.S.C.App. § 1506. Before enactment of the ADA, this section permitted limited economic regulation of intrastate flights and enabled the states to enforce their general laws against the airlines. The Supreme Court accounted this provision of marginal significance in Morales, describing it as a general "saving clause” that cannot supersede the specific preemption provision. - U.S. at-, 112 S.Ct. at 2037.

. Compare the ADA with ERISA legislation, in which Congress provided several federal causes of action to replace the preempted state causes. See Pilot Life, 481 U.S. at 43-44, 107 S.Ct. at 1551.

. Silkwood, 464 U.S. at 251, 104 S.Ct. at 623 (citing United Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, 663-64, 74 S.Ct. 833, 836-38, 98 L.Ed. 1025 (1954)).

. The Seventh Circuit noted that "[s]tate courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel,” confidently adding that "[t]he Federal Aviation Act does not expressly preempt state damages remedies." Bieneman v. City of Chicago, 864 F.2d 463, 471 (7th Cir.1988).

. Delta has thus refined its position again. Only a few years ago, it defended an injury case very similar to this one without hinting at a federal preemption defense. Schwamb v. Delta Airlines, Inc., 516 So.2d 452 (La.Ct.App.1987).

. Delta confuses its argument by contending that this state tort suit should not be permitted to proceed because it could impose duties that conflict with Federal Aviation Administration regulations governing carry-on baggage. There are no facts in the record that intimate the basis for such a conflict. Moreover, in Cipollone v. Liggett Group, Inc.,-U.S.-,-, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (plurality opinion); id. at -, 112 S.Ct. at 2625 (Blackmun, J., concurring), the Supreme Court held that when Congress has enacted an explicit preemption provision, courts should not usually imply broader preemption of state law. See Cipollone, - U.S.-, 112 S.Ct. at 2618 (plurality opinion); id. at --, 112 S.Ct. at 2625 (Blackmun, J., concurring). Therefore, this decision of our court does not address the possible preemptive effect of Federal Aviation Administration safety regulations governing aircraft and carriers. See Public Health Trust of Dade Cty., Fla. v. Luke Aircraft, Inc., 992 F.2d 291 (11th Cir.1993).

. We reiterate our rejection of Hodges’ fallback position that even if federal law completely displaced her state law claim, an implied private right of action may be inferred from FAA § 1374(a). Diefenthal v. CAB, supra.