IN THE SUPREME COURT OF TEXAS
════════════
No. 
02-0255
════════════  
Delta Air Lines, Inc. and Al Perez, 
Petitioners  
v.  
Robert C. Black, 
Respondent
════════════════════════════════════════════════════
On Petition 
for Review from the
Court of 
Appeals for the Tenth District of Texas
════════════════════════════════════════════════════
Argued on January 
15, 2003
            Justice Jefferson delivered the opinion 
of the Court.
            We 
grant Robert C. Black’s motion for rehearing in part. We withdraw our opinion of 
June 26, 2003 and substitute the following in its place.
            The 
Airline Deregulation Act of 1978 (ADA) provides that states “may not enact or 
enforce a law . . . related to a price, route, or service of an air carrier . . 
. .” 49 U.S.C. § 41713(b)(1). This case concerns the scope of this preemption 
provision, specifically, its application to state breach of contract and 
misrepresentation claims challenging an airline’s ticketing and boarding 
procedures. The trial court rendered summary judgment in favor of Delta 
Airlines, Inc. and its gate supervisor, Al Perez, without specifying the 
grounds. The court of appeals reversed, holding that the ADA did not preempt 
Black’s claims, and remanded the case for trial. ___ S.W.3d ___, ___. We granted 
Perez and Delta’s petition for review to decide whether the ADA preempts a 
passenger’s state law claims for an airline’s alleged failure to honor a 
confirmed first-class seat. 46 Tex. Sup. Ct. J. 14 (Oct. 10, 2002). We hold that 
it does and accordingly reverse the court of appeals’ judgment in part and 
render judgment that Black take nothing on his claims against Delta and Perez. 

I
BACKGROUND
On June 
23, 1995, Robert Black purchased two Delta airline tickets for travel from 
Dallas/Fort Worth to Las Vegas leaving that afternoon and returning on June 25. 
The invoice from Black’s travel agent showed two first-class reservations for 
Black and his wife. Although the invoice assigned Black first-class seats for 
both directions, his wife had an assigned seat only for the return flight. 
Black’s travel agent and manager of Smith Travel & Limousine, Melissa Shinn, 
suggested that Black ask the Delta gate agent if he and his wife could sit 
together in first class for the Dallas to Las Vegas flight. 
Upon 
arrival at the departure gate, Black requested adjacent seats in first class. 
The gate agent said that he would “see what [he] could do.” As other passengers 
boarded the plane, a Delta gate supervisor, Al Perez, appeared and informed 
Black that he and his wife did not have two confirmed first-class seats for the 
flight. While Delta had a confirmed first-class seat for Mr. Black, it only had 
a confirmed coach seat for his wife, whom Delta placed on a priority waiting 
list for first class. Perez told Black that, unless a first-class passenger 
relinquished a seat, Black’s wife would be seated in coach for the three-hour 
flight from Dallas to Las Vegas. This would not, however, affect her first-class 
seat for the return flight. At Black’s request, Perez spoke by telephone with 
Shinn. Shinn told Perez that her computer showed two confirmed first-class seats 
from Dallas to Las Vegas. Delta’s computers, however, did not show a confirmed 
first-class seat for Black’s wife. 
Unable to 
provide Black’s wife with first-class accommodations, Delta offered several 
alternatives: (1) the Blacks could sit in coach on their scheduled flight, (2) 
they could fly separately on the scheduled flight, one in coach and one in first 
class, (3) they could fly first class on a later flight to Los Angeles and then 
connect to Las Vegas, or (4) they could take a direct flight later that day to 
Las Vegas with confirmed first-class seats. Each of these alternatives included 
free travel vouchers, which Black asserts could be used only for coach seats. 
Black declined Delta’s offers. Instead, the Blacks drove to Love Field airport 
and chartered a private jet to and from Las Vegas at a cost of $13,150, which 
included the aircrew’s expenses in Las Vegas for two days. 
            Black 
sued Delta for breach of contract and intentional and negligent 
misrepresentation, and sued Perez for misrepresentation only. 

 Delta and Perez moved for summary judgment on four grounds: (1) preemption 
under the ADA, (2) Black’s failure to mitigate damages, (3) lack of causation, 
and (4) lack of an agency relationship between Smith Travel and Delta. The trial 
court granted summary judgment for Delta and Perez, without specifying the 
grounds. Black appealed the judgment. 
The court 
of appeals reversed the trial court’s judgment and remanded the case for trial. 
The court of appeals held that fact issues precluded judgment as a matter of law 
on the causation, mitigation, and agency issues. __ S.W.3d at ___. As to the key 
issue before this Court, the court of appeals held that Black’s claims were not 
preempted by the ADA because “federal airline regulations allow passengers whose 
reservations are not honored due to overbooking to seek recovery for damages ‘in 
a court of law or in some other manner.’” Id. at ___. We granted Perez 
and Delta’s petition for review to decide the single issue Perez and Delta 
(collectively, Delta) presented—preemption. 
II 
APPLICABLE LAW--PREEMPTION 
            Federal 
preemption of state law is grounded in the Supremacy Clause of the United States 
Constitution, which provides that “the Laws of the United States . . . shall be 
the supreme Law of the Land; and the Judges in every State shall be bound 
thereby, any Thing in the Constitution or Laws of any State to the Contrary 
notwithstanding.” U.S. Const., 
art. VI, cl. 2. Under the Supremacy Clause, if a state law conflicts with 
federal law, the state law is preempted and “without effect.” Maryland v. 
Louisiana, 451 U.S. 725, 746 (1981). Preemption can take one of several 
forms. A federal law may preempt a state law expressly. Great Dane Trailers, 
Inc. v. Estate of Wells, 52 S.W.3d 737, 743 (Tex. 2001). It may also preempt 
a state law impliedly, either (i) when the scheme of federal regulation is 
sufficiently comprehensive to support a reasonable inference that Congress left 
no room for supplementary state regulation or (ii) if the state law actually 
conflicts with federal regulations. Id. A state law presents an actual 
conflict when a party cannot comply with both state and federal regulations or 
when the state law would obstruct Congress’ purposes and objectives. Id. 

“The 
purpose of Congress is the ultimate touchstone” in every preemption case. 
Retail Clerks Int’l Ass’n. v. Schermerhorn, 375 U.S. 96, 103 (1963). 
Congressional intent is discerned primarily from the statute’s language and 
structure. Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996). Also 
relevant is the purpose of the statute as a whole, which is revealed through 
“the reviewing court’s reasoned understanding of the way in which Congress 
intended the statute and its surrounding regulatory scheme to affect business, 
consumers, and the law.” Id. 
We begin 
our analysis with a discussion of the relevant federal statute and the United 
States Supreme Court cases that control this area.
A
Statutory Framework
Before 1978, the Federal Aviation Act of 1958 
(FAA) authorized the Civil Aeronautics Board (CAB) to regulate the interstate 
airline industry. 49 U.S.C. § 1301 (current version at 49 U.S.C. § 40101); 
Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995). The Act provided 
that “nothing . . . in this chapter shall in any way abridge or alter the 
remedies now existing at common law or by statute, but the provisions of this 
chapter are in addition to such remedies.” 49 U.S.C. § 1506. Thus, before 1978, 
states were allowed to regulate intrastate airfare. Morales v. Trans World 
Airlines, Inc., 504 U.S. 374, 378 (1992). 
In 1978, 
Congress amended the FAA by enacting the Airline Deregulation Act (ADA), which 
deregulated the industry. 49 U.S.C. § 40101(a)(6), (a)(12)(A) (formerly codified 
at 49 U.S.C. § 1302(a)(4), (a)(9)). In enacting the ADA, Congress determined 
that “‘maximum reliance on competitive market forces’ would best further 
‘efficiency, innovation, and low prices’ as well as ‘variety [and] quality . . . 
of air transportation services.’” Morales, 504 U.S. at 378 (quoting 49 
U.S.C. § 1302(a)(4), (a)(9)). Congress included an express preemption provision 
in the ADA “[t]o ensure that the States would not undo federal deregulation with 
regulation of their own.” Morales, 504 U.S. at 378. The preemption 
clause states: 
Except 
as provided in this subsection, a State, political subdivision of a State, or 
political authority of at least 2 States may not enact or enforce a law, 
regulation, or other provision having the force and effect of law related to a 
price, route, or service of an air carrier . . . .
49 U.S.C. § 
41713(b)(1)(emphasis added). 

 Thus, to determine the propriety of the court of appeals’ judgment, we must 
ascertain whether Black’s state law claims fall within the ADA’s express 
preemption provision. If they do, Black’s claims fail.
B
Morales and Wolens
            The 
Supreme Court has discussed the scope of the ADA’s express preemption clause on 
two occasions. It first considered the ADA’s preemptive scope in Morales. 
504 U.S. at 374. There, the Court examined whether the ADA preempted enforcement 
of guidelines concerning regulation of airline fare advertising through Texas’s 
consumer protection statutes. Id. at 378. The Court focused on the 
preemption clause’s “relating to” language. Id. at 383-86. Relying on its 
ERISA line of cases and the ordinary meaning of the statute’s words, the Court 
construed the phrase “relating to” broadly to preempt “State enforcement actions 
having a connection with, or reference to, airline ‘rates, routes, or 
services.’” Id. at 384. Based on this “broad preemptive purpose,” the 
Court rejected contentions that section 1305(a)(1) 

 only preempted states from actually prescribing rates, routes, or services, or 
that only state laws specifically aimed at the airline industry were preempted. 
Id. at 384-86. 
Although 
the Court warned that “‘some state actions may affect [airline fares] in too 
tenuous, remote, or peripheral a manner’ to have preemptive effect,” it 
concluded that the obligations imposed by the guidelines would impact airlines’ 
ability to market their product and the fares they charged. Id. at 390 
(quoting Shaw v. Delta Air Lines, 463 U.S. 85, 100 n.21 (1983)). Thus, 
the guidelines had a “forbidden significant effect” on the airlines’ rates, 
routes, and services, primarily because they restricted fare advertising, which 
“relates to” price. Id. at 388-89. The Court held that, under these 
circumstances, the ADA preempted the fare advertising provisions in the general 
state consumer protection statutes at issue. Id. at 391. 
The only 
other time the Court has addressed the scope of the ADA’s preemption provision 
was in American Airlines, Inc. v. Wolens, 513 U.S. 219. That case 
involved state law consumer fraud and breach of contract claims arising from 
retroactive changes in an airline’s frequent flyer program. Id. at 
224-25. The Court focused on another portion of the ADA’s preemption clause — 
the phrase “enact or enforce any laws” — to determine the ADA’s preemptive 
scope. Id. at 226. It held that, like the guidelines at issue in 
Morales, Illinois’s consumer fraud statute “serve[d] as a means to guide 
and police the marketing practices of the airlines.” Id. at 228. Thus, 
the ADA preempted the plaintiffs’ consumer fraud claims. Id. 
The Court 
then turned to the plaintiffs’ breach of contract claims. Id. It held 
that the ADA’s preemption clause did not shield airlines from “suits alleging no 
violation of state-imposed obligations, but seeking recovery solely for the 
airline’s alleged breach of its own, self-imposed undertakings.” Id. at 
228. The Court reasoned that some of the terms and conditions airlines offer, 
such as frequent flyer programs, are private obligations and do not amount to 
State “‘enactment or enforcement [of] any law, rule, regulation, standard, or 
other provision having the force and effect of law’ within the meaning of 
section 1305(a)(1).” Id. at 228-29. The Court limited its holding, 
however, to suits based on the terms of the parties’ bargain “with no 
enlargement or enhancement based on state laws or policies external to the 
agreement.” Id. at 233. Courts have interpreted this to mean that if a 
contract claim cannot be adjudicated without resort to external law, the claim 
is preempted by the ADA. See, e.g., Smith v. Comair, Inc., 134 
F.3d 254, 257 (4th Cir. 1998); Boon Ins. Agency, Inc. v. Am. Airlines, 
Inc., 17 S.W.3d 52, 58-59 (Tex. App.—Austin 2000, pet. denied); 
Howell v. Alaska Airlines, Inc., 994 P.2d 901, 905 (Wash. Ct. App. 
2000). 
C
Kiefer
            In 
the wake of the Supreme Court’s decisions in Morales and Wolens, 
lower federal and state courts have struggled with determining when the ADA 
preempts state law claims. 

 This Court considered the scope of the ADA’s preemption clause in 
Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274 (Tex. 1996). In 
Kiefer, we decided the extent to which “state common-law personal-injury 
negligence actions against airlines are preempted by the [ADA].” Id. at 
275. Following Morales and Wolens, we applied a two-part analysis 
to determine whether the plaintiffs’ personal injury claims were preempted. 
Id. at 281-82; see also 49 U.S.C. § 41713(b)(1). First, we 
examined whether the claims related to airline rates, routes, or services. 
Id. at 281. Second, we explored whether the claims constituted the 
enactment or enforcement of a state law, rule, regulation, standard or other 
provision. Id. at 281-82. We concluded that, although the plaintiffs’ 
personal injury claims clearly related to airlines’ services, their claims did 
not amount to enforcement of a state law and thus were not preempted. Id. 
at 282. 
In 
reaching this conclusion, we acknowledged the difficulty in differentiating 
between claims that are preempted and those that are not. Id. at 281. We 
noted that, unlike the state consumer protection legislation at issue in 
Morales, negligence actions do not “carry the same ‘potential for 
intrusive regulation of airline business practices . . . .’” Id. at 282 
(quoting Wolens, 513 U.S. at 227). We were careful to state, however, 
that certain tort actions, such as negligent misrepresentation, may be 
indistinguishable from the statutory consumer protection actions in 
Morales and Wolens. Id. at 283. And depending on the nature 
and extent of damages sought, even simple negligence actions may constitute an 
impermissible regulation of the airline industry through state tort law. 
Id. at 282. 
Rather 
than declare categorically that personal injury claims are always 
excepted from preemption, we focused on the extent to which the claims in 
Kiefer threatened to encroach on the congressional objective of airline 
deregulation. Id. Because preemption depends on the nature of the 
particular claim, we observed that the ADA’s preemptive effect on other state 
law claims would require a “closer working out.” Id. at 281. With respect 
to breach of contract claims, we noted that the “very strict limitation” 
Wolens puts on permissible contract claims “demonstrates the breadth of 
ADA preemption.” Id. Like Wolens, we recognized that the ADA 
allows breach of contract claims only if they involve contract terms voluntarily 
undertaken by the parties. Id. at 281-82. And we noted that voluntary 
contractual undertakings do not “effectuate purposes that could have a 
prohibited regulatory effect on airlines.” Id. at 282. 
With this 
framework in mind, we turn to a “closer working out” of the ADA preemption 
clause with respect to Black’s claims. Wolens, 513 U.S. at 235; 
Kiefer, 920 S.W.2d at 281.
III 
ANALYSIS
            Black 
contends that Wolens and Kiefer shield his breach of contract 
claim from preemption. He argues that, by refusing to provide his wife a 
first-class seat on the flight from Dallas to Las Vegas, Delta breached a 
self-imposed contractual obligation. Because his claims arise from Delta’s own 
undertakings, as opposed to an obligation imposed by state law, Black argues 
that there is little risk similar state claims would undo federal deregulation. 
Thus, according to Black, his claims are not subject to preemption under the 
ADA. 
Delta, on 
the other hand, contends that Black’s claims are preempted by the ADA because 
they relate directly to the airline services Delta provides. Delta argues that 
ticketing and boarding procedures are fundamental to airline services and are 
far removed in character from the voluntary frequent flyer program at issue in 
Wolens. Specifically, Delta contends that because Department of 
Transportation (DOT) regulations define and control the procedures for denied 
boarding, Black’s state law claims are preempted. For the reasons discussed 
below, we agree with Delta. 
A
Related to an Airline’s Services 

            To 
answer whether a claim is preempted by the ADA, we first determine whether the 
claim is related to an airline’s prices or services within the meaning of the 
ADA’s preemption provision. Kiefer, 920 S.W.2d at 281. The ADA does not 
specify, and the United States Supreme Court has not determined, what activities 
constitute airline services. It is not surprising, then, that courts have 
fashioned inconsistent tests for determining whether a state law action is 
related to an airline’s services. Compare Charas v. Trans World 
Airlines, Inc., 160 F.3d 1259, 1261 (9th Cir. 1998), with Hodges 
v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995). The United States 
Court of Appeals for the Ninth Circuit has narrowly defined services as “the 
prices, schedules, origins and destinations of the point-to-point transportation 
of passengers, cargo, or mail.” Charas, 160 F.3d at 1261. That court 
reasoned that because the word services appears next to the words rates and 
routes in section 41713(b)(1), “services” must refer to “the provision of air 
transportation to and from various markets at various times.” Id. at 
1266. Under this interpretation, in-flight beverages, personal assistance to 
passengers, handling luggage, keeping aisles clear, and other amenities are not 
included in the definition of services. Id. at 1261. 
The Fifth 
Circuit’s more expansive interpretation of airline services includes “ticketing, 
boarding procedures, provision of food and drink, and baggage handling, in 
addition to the transportation itself.” Hodges, 44 F.3d at 336. 
Hodges relied in part on the CAB’s statements implementing the ADA, which 
made clear that reservation and boarding practices are services within the 
meaning of the ADA. See id. at 337 (citing 44 Fed. Reg. 9948, 9951 (Feb. 
15, 1979)); see also Smith v. Am. W. Airlines, Inc., 44 F.3d 344, 
347 (5th Cir. 1995) (limiting services to “economic decisions concerning 
boarding, e.g., overbooking or charter arrangements, and contractual decisions 
whether to board particular ticketed passengers”). The Hodges court 
reasoned that, because these “matters are all appurtenant and necessarily 
included with the contract of carriage between the passenger or shipper and the 
airline,” Congress intended them to be services protected from state regulation. 
44 F.3d at 336.
In this 
case, Black’s claims relate to Delta’s boarding procedures and seating policies. 
Although several courts have fashioned different tests to determine whether a 
state law action relates to an airline’s services, most courts generally agree 
that state law claims involving seating and boarding procedures relate to 
services. 

 This approach is consistent with both the Fifth and Ninth Circuit Court of 
Appeals’ conclusions that an airline’s boarding procedures are an integral part 
of the services that an airline provides. See, e.g., Somes v. United 
Airlines, Inc., 33 F. Supp. 2d 78, 85 (D. Mass. 1999) (noting that both the 
Fifth and Ninth Circuits’ definitions of services would include boarding). The 
mere fact that Black’s claims relate to the denial of first-class status, rather 
than point-to-point transportation, does not remove his claims from the 
definition of “services.” See Wolens, 513 U.S. at 226 (noting that the 
term “services” includes “access to flights and class-of-service upgrades”). 

Unlike the 
frequent flyer program in Wolens, seating policies and boarding 
procedures are not peripheral to the operation of an airline, but are 
inextricably linked to the contract of carriage between a passenger and the 
airline and have a definite “connection with, or reference to” airline services. 
Morales, 504 U.S. at 384. Given Morales’ broad interpretation of 
the words “relating to,” and the generally accepted understanding of the word 
“services,” we conclude that an airline’s boarding procedures and seating 
policies “relate to” the services an airline provides to its customers. 
We next 
consider whether the ADA prohibits enforcement of Black’s claims. 
B
State Enactment or Enforcement 
The second 
step in the preemption analysis involves determining whether Black’s claims, if 
allowed, would constitute enactment or enforcement of a state law within the 
meaning of the ADA’s preemption clause. Kiefer, 920 S.W.2d at 281. In 
deciding whether contract claims are preempted, we distinguish between 
obligations dictated by the State and those voluntarily undertaken by the 
airline. Wolens, 513 U.S. at 233. When parties privately negotiate a 
contract’s terms and then sue in state court for breach of those terms, there is 
generally no specter of state-imposed regulation. Id. at 228-29. Thus, as 
we noted in Kiefer, the enforcement of a contractual commitment 
voluntarily undertaken does not amount to state enactment or enforcement of a 
law that the ADA’s preemption provision forbids. 920 S.W.2d at 281-82. 
In 
Wolens, the Supreme Court determined that a frequent flyer program was a 
self-imposed undertaking between private parties and was therefore too tenuous 
or peripheral to constitute state enforcement. 513 U.S. at 228-29. Unlike 
Wolens’ claims that related to a self-imposed frequent flyer program, Black’s 
claims relating to Delta’s ticketing and boarding procedures implicate directly 
the federal interest in deregulated air transportation. See Somes, 
33 F. Supp. 2d at 85; Rockwell v. UPS, No. 2:99-CV-57, 1999 U.S. Dist. 
LEXIS 22036, at *6 (D. Vt. July 7, 1999) (noting that “preemption applies to 
services which are ‘regular, recurrent, or necessary features of actual flight 
or airline operations’ (as opposed to beverage services and similar amenities)”) 
(quoting Somes, 33 F. Supp. 2d at 83); Smith, 134 F.3d at 259; 
Chukwu v. Bd. of Dirs. British Airways, 889 F. Supp. 12, 13 (D. Mass. 
1995). Thus, contrary to the ADA’s purpose, Black’s claims have the potential 
for “intrusive regulation of airline business practices.” Kiefer, 920 
S.W.2d at 282. 
When Black 
purchased the airline tickets, a binding contract of carriage was created 
between Black and Delta. See Woodward v. Tex. & P. Ry. Co., 86 
S.W.2d 38, 39 (Tex. 1935); Boon, 17 S.W.3d at 55. Pursuant to the 
regulatory authority conferred by Congress under the ADA, the DOT promulgated 
comprehensive regulations interpreting the ADA. Black and Delta’s contract for 
carriage incorporates these regulations. See 14 C.F.R. §§ 253.4, .5; 
Wolens, 513 U.S. at 230 (authorizing airlines to incorporate the federal 
regulations into their contracts of carriage). In particular, part 250 permits 
the DOT to regulate “oversales” in air carrier service. 14 C.F.R. §§ 250.1-.9. 
These regulations require every air carrier to “establish priority rules and 
criteria for determining which passengers holding confirmed reserved space shall 
be denied boarding on an oversold flight in the event that an insufficient 
number of volunteers” agree to relinquish their seat. Id. § 250.3. 

Section 
250.5 requires airlines to pay compensation to any passenger who is 
involuntarily denied boarding caused by an oversold flight. Id. § 250.5. 
A passenger who is involuntarily denied boarding, however, is not required to 
accept this compensation and can instead “decline the payment and seek to 
recover damages in a court of law or in some other manner.” Id. § 250.9. 
The federal regulations also provide that under certain circumstances, a 
passenger denied boarding involuntarily from an oversold flight is not entitled 
to receive compensation from the airline. Id. § 250.6. In particular, if 
a passenger “is offered accommodations or is seated in a section of the aircraft 
other than that specified on the ticket at no extra charge,” then that passenger 
is not eligible for denied boarding compensation. Id. § 250.6(c).
Black 
contends that, pursuant to section 250.9, he had the option to decline 
compensation under the federal scheme and instead “seek to recover damages in a 
court of law.” Id. § 250.9(b). The court of appeals agreed and held that, 
although Black was not entitled to denied boarding compensation, he could forego 
the remedies provided by the DOT regulations and seek damages in court. __ 
S.W.3d at __. The court of appeals based its decision on the DOT regulations 
relating to passengers that are involuntarily denied boarding. 
Id.; see also 14 C.F.R. § 250.9. But Black and the court of 
appeals misread these regulations. Black was not denied boarding, as that term 
relates to section 250.9. 
The 
passenger option of declining payment from the airline and instead seeking 
recovery in a court of law is reserved for those passengers who are 
involuntarily denied boarding and thus eligible for denied boarding 
compensation. 14 C.F.R. § 250.9. Because Delta offered Black’s wife another seat 
on the same flight, she was not denied boarding. Even if we considered Black’s 
wife to have been involuntarily denied first-class boarding, the Blacks do not 
have a valid claim for “denied boarding compensation.” This is so because they 
fall within one of the eligibility exceptions to qualify for compensation — a 
passenger is not eligible for denied boarding compensation if the airline offers 
the passenger accommodations in another section of the aircraft at no charge. 
Id. § 250.6. Because Delta offered Black and his wife various 
accommodations, including coach seats, Black and his wife were ineligible for 
denied boarding compensation. Id. And because Black and his wife were not 
eligible to receive the denied boarding compensation from Delta, they could not 
possibly decline this compensation and “seek to recover damages in a court of 
law.” Id. § 250.9. Accordingly, Black cannot rely on section 250.9, 
which, as a prerequisite to recover, requires the party to be eligible to 
receive denied boarding compensation. 
As 
discussed above, the parties’ contract incorporated the DOT regulations on 
denied boarding compensation. Black, however, seeks to enlarge Delta’s 
obligations to him. He attempts to modify the contract terms to allow him and 
his wife to forego the regulatory remedies and instead sue in court. This Court, 
however, is confined, “in breach-of-contract actions, to the parties’ bargain.” 
Wolens, 513 U.S. at 233. We cannot enlarge or enhance that bargain based 
on state law or policies external to the agreement. Id. Nothing in the 
contract entitles Black to the external remedy of reimbursement for the cost of 
a private chartered jet. The regulations promulgated under the ADA, which are 
incorporated as part of the contract, provide the procedure and remedy in the 
event a passenger is denied boarding but offered specified accommodations, and 
therefore preclude the additional remedies Black has pursued in state court. 
See 14 C.F.R. §§ 250.1-.9. 
             Even 
were the contract silent about the federal regulations, other courts have 
applied similar reasoning to preempt breach of contract claims that relate to 
price or service and seek to impose state laws or policies. 

 As the court of appeals in this case correctly noted: 
[W]e 
cannot overlook the fact that the alleged contractual violation at issue in this 
appeal involves a common condition unique to the airline industry - the failure 
to seat an allegedly confirmed ticket holder because of overbooking - and that 
unlike the frequent-flier agreements at issue in Wolens, specific federal 
regulations govern compensation for air passengers who are involuntarily 
prevented from boarding a flight due to overbooking.
 
__ S.W.3d at__. These 
“specific federal regulations” have a national purpose in that they provide a 
uniform system of compensation to passengers. If passengers were permitted to 
challenge airlines’ boarding procedures under state common law, the airline 
industry would potentially be subject to regulation by fifty different states. 
Smith, 134 F.3d at 258-59 (allowing passengers to challenge boarding 
procedures would permit “the fifty states to regulate an area of unique federal 
concern -- airlines’ boarding practices.”); see also John W. Freeman, 
State Regulation of Airlines and the Airline Deregulation Act of 1978, 44 
J. Air L. & Com. 747, 755 
(1979) (noting that “the effect of the provision was to ‘prevent conflicts and 
inconsistent regulations’”) (quoting H.R. 
Rep. No. 1211, 95th Cong., 2d Sess. 16 (1978)). The fact that federal 
regulations expressly address airline boarding procedures strengthens our 
conclusion that Black’s breach of contract claims resulting from Delta’s 
boarding and seating procedures are preempted by the ADA. To hold otherwise 
could create extensive multi-state litigation, launching inconsistent assaults 
on federal deregulation in the airline industry, every time an airline 
reassigned a passenger’s seat. 
We 
conclude that Delta’s boarding and seating policies relate to the services it 
provided to Black, and that Black’s claims can only be adjudicated by reference 
to laws and policies external to its contract with Delta. Accordingly, we hold 
that 49 U.S.C. section 41713(b) preempts Black’s contract claims. 
We now 
turn to Black’s remaining claims for misrepresentation and fraud, which he 
argues survive ADA preemption. We disagree. Because Black’s misrepresentation 
and fraud claims are premised on Delta’s ticketing and boarding procedure, they 
are directly related to Delta’s services. See discussion supra 
Part III.A. The court of appeals concluded, however, that because Black’s 
misrepresentation claims did not turn on any requirement imposed by a Texas 
legislative body, they were not preempted. ___ S.W.3d at __. To the contrary, 
state tort actions can be state enforcement under 49 U.S.C. section 41713(b)(1). 
See, e.g., Buckman Co. v. Plaintiff’s Legal Comm., 531 U.S. 
341, 351 (2001); San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 
247 (1959) (recognizing the regulatory effect of state law damage claims and 
their potential for frustrating congressional objectives); Kiefer, 920 
S.W.2d at 282. 
Moreover, 
both Wolens and Kiefer suggest that state misrepresentation and 
fraud claims are preempted by the ADA. Wolens, 513 U.S. at 228; 
Kiefer, 920 S.W.2d at 283. Wolens held that state law claims under 
a state consumer fraud act were preempted by the ADA. Wolens, 513 U.S at 
228. Claims under a consumer fraud statute are comparable to claims for 
misrepresentation. In Kiefer, we indicated that “an action for negligent 
misrepresentation might be . . . indistinguishable from the statutory consumer 
protection actions in Morales and Wolens.” Kiefer, 920 
S.W.2d at 283. Both would impose state policies on the operation of air carriers 
that are external to the parties’ agreement. Wolens, 513 U.S. at 229 n.5; 
Kiefer, 920 S.W.2d at 282. A state’s common law cannot operate against an 
airline in this context when it would constitute state enforcement of a law 
relating to airline services. See Morales, 504 U.S. at 383. Accordingly, 
because Black’s misrepresentation and fraud claims relate to the services Delta 
provides and if allowed would amount to enactment or enforcement of state law, 
they are preempted. 
IV
CONCLUSION
For 
these reasons, we reverse the court of appeals’ judgment in part and render 
judgment that Black take nothing on his claims against Delta Airlines, Inc. and 
Al Perez.
 
 
______________________________  
Wallace B. Jefferson 
Justice 
 
 
 
OPINION DELIVERED: September 11, 
2003