[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-15862
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-01577-CV-T-26-TGW

RENEE KOUTSOURADIS,

Plaintiff-Appellant,

versus

DELTA AIR LINES, INC.,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 10, 2005)**

Before TJOFLAT and HILL, Circuit Judges, and GRANADE*,Chief District
Judge.

*Honorable Callie V. Granade, United States Chief District Judge for the Southern District of
Alabama, sitting by designation.

PER CURIAM:

This is an appeal from a grant by the district court of a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a) in favor of Delta Air Lines, Inc. (Delta) and against Renee Koutsouradis (Koutsouradis). At trial, in granting Delta's motion at the close of Koutsouradis' case-in-chief, the district court determined that Koutsouradis' breach of contract of carriage claim was preempted by the Airline De-regulation Act (ADA), 49 U.S.C. § 41713(b), as amended, and, that Delta was entitled to a judgment as a matter of law on her claim against the company for punitive damages. Prior to trial, the district court had dismissed Koutsouradis' claim for intentional infliction of emotional distress. Based upon the following, we affirm the judgment of the district court.

## I.

In 2002, Koutsouradis and her husband were returning home after a vacation in Las Vegas to Tampa on a Delta 757 airplane, with a stopover in Dallas. Koutsouradis had packed a vibrator, a sex toy, in her checked luggage. After she had boarded the plane and was seated, over the P.A. system, Koutsouradis was summoned to the front of the plane by a Delta gate agent.

The gate agent asked Koutsouradis to follow him down the stairway from the jetway to the airport tarmac, telling her that something was vibrating in her bag

2

and she needed to check it.  Koutsouradis told the agent that it was probably her vibrator.

On the tarmac, in the presence of three Delta male employees, and apparently in view of some of the other passengers still seated on the plane, the gate agent asked Koutsouradis to open her bag and take the batteries out of the vibrator.  Koutsouradis alleges that, at this time, one of the Delta male employees, Ricky Anderson, made sexually explicit statements towards her, causing the other men to laugh.  She claims Anderson licked his lips and said "What do [you] need that for?", "Doesn't your husband satisfy you?", and "Come on Baby, let me satisfy you."

Koutsouradis now claims she suffers from panic attacks and post-traumatic stress disorder from the sexually offensive and outrageous comments made to her by Anderson and the laughter of the other men.  She seeks compensation from Delta for the conduct of its employees.

At trial, Koutsouradis introduced e-mails to the jury as evidence of her case-in-chief.  Her initial e-mail to Delta stated that she had received unprofessional service from Delta, been laughed at by four men, and that she would never fly Delta again.

Delta responded with an apology message on Koutsouradis' answering

machine. It also sent her a brief e-mail apology and promised to look into the matter further.

In her second e-mail to Delta, Koutsouradis thanked Delta for its apology and repeated that she had been laughed at. She wrote that she felt she should be compensated for the harassment she had received. She also threatened legal action that would cast Delta with bad publicity.

No mention was made in any of Koutsouradis' e-mails of inappropriate comments or body action by any Delta male employees. Delta sent two further e-mail apologies.

At trial, Delta's gate agent, Steve Chapman, testified that, on the tarmac, Koutsouradis had knelt down, opened her bag, placed her hand inside the bag and stopped the vibration. She looked over her shoulder at the ramp security agent, Jeff Cook, who nodded to her, and she zipped her bag back up. Cook gestured to Koutsouradis that she could return to the plane and Chapman escorted her back up the stairs. No one ever asked her to remove the vibrator from the bag.

Both Chapman and Cook testified that no one said or did anything inappropriate during the entire episode and that they heard or observed no unprofessional conduct or comments. Chapman testified that, in his opinion, Koutsouradis did not seem upset, stressed or embarrassed at the time of the alleged

incident.

In Anderson's testimony, he denied making any of the gestures and comments alleged. He stated that he did not see what was in Koutsouradis' bag. He testified that when his supervisor Cook gave him a nod, he picked up the bag and loaded it onto the airplane.

## II.

Koutsouradis filed suit against Delta for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, gender discrimination, invasion of privacy, and breach of contract of carriage. The district court dismissed all of the counts except the count for breach of contract of carriage. Koutsouradis claimed she was entitled to punitive damages.

In its answer, Delta asserted that the ADA preempted her state law claim because it sought to enlarge the terms of her contract of carriage with Delta. Delta denied that Koutsouradis was entitled to punitive damages under Florida law. It moved for summary judgment on the basis that the comments and actions alleged to have been committed by Delta employees did not rise to the level of a gross insult under Florida law.

The district court denied Delta's motion for summary judgment and the case proceeded to jury trial. After Koutsouradis had presented her case-in-chief, the

district court stopped the trial and granted Delta's motion for judgment as a matter of law both as to ADA preemption and punitive damages. This appeal follows.

**III.**

We review the grant by the district court of Delta's motion for judgment as a matter of law *de novo*. *See Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999).

**IV.**

*A. ADA Preemption*

Congress enacted the ADA, 49 U.S.C. § 41713(b), in 1978 which largely deregulated domestic air transport. *See American Airlines, Inc. v. Wolens*, 115 S.Ct. 817, 821 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.*, 112 S.Ct. 2031, 2034 (1992), the ADA included a preemption clause which read in relevant part: [N]o State . . . shall "enact or enforce a law, rule, regulation, standard, or other provision having the force and effect of law relating to price, route, or *service* of an air carrier . . . ." 49 U.S.C. § 41713(b)(1)(emphasis added).

The ADA preemption clause does not shelter airlines from suits which allege no violation of state-imposed obligations, but seek only recovery for the airline's alleged breach of its own, self-imposed undertakings. *See Wolens*, 115 S.Ct at 824. "Preemption may be either express or implied, and is compelled

6

whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Morales*, 112 S.Ct. at 1036.

The purpose of the ADA's preemption provision is to increase "reliance on competitive market forces rather than pervasive federal regulation." *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 335 (5th Cir. 1995)(en banc)(where 'service' for purposes of the ADA preemption clause is defined to include elements of air carrier service such as boarding procedures and baggage handling).[1] This circuit has adopted the Fifth Circuit's definition of 'service' for ADA preemption purposes to include boarding procedures and baggage handling. *See Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257(11th Cir. 2003).

Koutsouradis claims that the district court erred in finding that her breach of contract of carriage claim was preempted by the ADA. She claims that because

---

[1] The Fifth Circuit in *Hodges* stated:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, *boarding procedures*, provision of food and drink, and *baggage handling*, in addition to the transportation itself. *These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline.* It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

44 F.3d at 336 (emphasis added.).

7

her claim arose from "a self-imposed undertaking" within the meaning of *Wolens*, preemption did not occur in her case because the breach did not regulate or adversely affect air carrier services. *See Branche*, 342 F.3d at 1258.

Delta claims that Koutsouradis' contract claim is not a routine contract claim as present in *Wolens*. Instead it argues that claim for the breach of contract of carriage falls within the ADA preemption clause because it seeks to enforce state-imposed obligations. *See Wolens*, 115 S.Ct. at 825-26.

The district court correctly noted that Koutsouradis' breach of contract of carriage claim related to "services' within the meaning of the ADA's preemption clause. *See Branche*, 342 F.3d at 1256-57, *citing Hodges*, 44 F.3d at 336. The panel in *Branche* adopted the definition of "services" set forth in *Hodges*, that is, to include items such as boarding procedures and baggage handling. *See* note 1 *supra*. We are bound by the precedent established in *Branche.* The district court is affirmed on the issue of preemption.[2]

*B. Punitive Damages*

Koutsouradis next claims she is entitled to punitive damages under Florida

---

[2] Koutsouradis' bag was vibrating. The situation needed to be addressed from a security standpoint. Baggage handling, passenger handling and courteousness relate to the heart of services that an airline provides. These services are inherent when you board an airplane. The basis of her claim was personal rudeness, wonton interference and lack of good treatment. If a passenger is unhappy with the way his or her baggage is handled, or the way he or she are treated, such individual is free never to fly that airline again.

common law on the basis of strict liability on a common carrier for the misconduct of its agents, whether or not such agents are managers or are acting outside the scope of their employment. She claims that *Fla. Stat.* § 768.72(3) is consistent with this theory.

Delta claims that, under *Fla. Stat.* § 768.72(3), the Florida Legislature has mandated when an employer may be liable for punitive damages based on an employee's conduct. The punitive damages claim must be dismissed because neither Delta nor its management participated in, ratified, condoned or consented to the actions of the four lower level employees accused of misconduct. We agree.

Section 768.72(3) provides that punitive damages may be imposed upon an employer for the conduct of its employee or agent only of the employer actively and knowingly participates, condones, ratifies or consents to such conduct. There is clearly no evidence in the record to support that this occurred in the present case. In fact, the e-mails sent by Delta to Koutsouradis strongly undermine her argument.

The district court was correct in granting Delta's motion for judgment as a matter of law on this issue. We affirm.

*C. Intentional Infliction of Emotional Distress*

Koutsouradis finally claims that the district court erred in dismissing her

9

claim for intentional infliction of emotional distress for failure to state a cause of action. She claims that Anderson's conduct was extreme, outrageous, atrocious and intolerable. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985).

Delta claims that even if Koutsouradis' allegations as to Anderson's behavior and the laughter and suggestive comments were true, they did not rise to the level of outrageousness necessary to support a claim. *Id. quoting* Restatement (Second) of Torts § 46 (1965) (where liability is found when conduct surpasses all boundaries of decency and is "utterly intolerable in a civilized community"). We agree.

Florida case law has consistently held that mere insults and indignities do not support a claim for the tort of intentional infliction of emotional distress. *See Scheller v. American Medical Intern., Inc.*, 502 So.2d 1268 (Fla.App. 4 Dist., 1987); *Lay v. Roux Laboratories, Inc.*, 379 So.2d 451 (Fla.App. 1 Dist., 1980). Federal courts follow Florida law, holding that obscene and sexually explicit comments, verbal invitations for sex, questions as to a plaintiff's sexual behavior, sexually suggestive gestures and the like do not rise to a level sufficient to support the tort alleged here. *See Studstill v. Borg Warner Leasing*, 806 F.2d 1005 (11th Cir. 1986).

Here, the sexual comments alleged to be made by Anderson, including the licking of lips, prompting the laughter of two other male Delta employees, while distasteful in nature, are insufficient to support Koutsouradis' claim for the intentional infliction of emotional distress.   The district court properly dismissed this claim for failure to state a cause of action.

## V.

Based upon the foregoing, the judgment of the district court is affirmed.

**AFFIRMED.**

11